UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD PUCCI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:18-cv-05719 |
| | ) |
| WELLS FARGO INSURANCE | ) |
| SERVICES, INC., WELLS FARGO | ) |
| INSURANCE SERVICES USA, INC., | ) |
| N/K/A USI INSURANCE SERVICES | ) |
| NATIONAL, INC. | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' 12(B)(6) MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF**

Michael J. Grant
Melody L. Gaal
TABET DIVITO & ROTHSTEIN LLC
209 South LaSalle Street, 7th Floor
Chicago, IL 60604
Telephone: (312) 762-9450
Firm No. 38234
mgrant@tdrlawfirm.com
mgaal@tdrlawfirm.com

## INTRODUCTION

Plaintiff's First Amended Complaint asserts four counts: Count I - Breach of Contract-(Unconscionability); Count II - violation of the Consumer Fraud Act and Deceptive Practice Act; Count III - fraud and deceit; and Count IV - fraudulent concealment. Each count is fundamentally flawed and fails to state a cognizable claim. Count I fails to state a claim for breach of contract because it fails to allege the specific contract(s) and/or provisions on which Plaintiff's claim is based, whether Plaintiff performed his obligations under these contracts, or the damages Plaintiff incurred as a result of Defendants' purported breach. Counts II-IV fail to plead fraud with particularity as required under Rule 9(b) and should be dismissed. Counts II-IV also fail to plead the essential elements of each claim and should be dismissed for this additional reason. Accordingly, the First Amended Complaint should be dismissed in full pursuant to Rule 12(b)(6).

## ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

Plaintiff's First Amended Complaint contains a number of vague and conclusory allegations that make it difficult to understand Plaintiff's claims. The First Amended Complaint alleges that Plaintiff is an insurance broker with an unknown interest in a Chicago insurance company and a minority interest in a Las Vegas insurance company. (Compl. ¶¶ 7-8, 12 (Dkt. No. 5 at Ex. A).) In 2011, Defendant Wells Fargo Insurance Services, Inc. ("Wells") allegedly offered to: (i) purchase Plaintiff's business, which included offices in Chicago and Las Vegas; and (ii) hire Plaintiff as a full-time employee in Chicago pursuant to a written employment agreement (the "Employment Agreement"). (*Id.* ¶ 7.) (The alleged Employment Agreement is not attached to the First Amended Complaint). After Plaintiff became an employee of Wells and/or its successor corporation, Wells Fargo Insurance Services, USA, Inc. ("Wells USA"), both Defendants purportedly engaged in three wrongful acts:

1. Defendants deliberately delayed or "froze" the acquisition of the Las Vegas

insurance company and then used that delay as a basis to accuse Plaintiff of violating his Employment Agreement and Wells' "code of ethics" for having a continued financial interest in the Las Vegas company. (*Id.* ¶¶ 9-12.) According to Plaintiff, that conflict of interest was not resolvable because he was a minority partner in the Las Vegas company, and so he resigned in November 2014. (*Id.* at ¶ 12; *see also* Exhibit A at p. 1.)

2. Sometime prior to Plaintiff's termination, in 2014, Plaintiff allegedly discovered that Wells and Wells USA "were illegally changing and/or altering [his] commissions and falsifying documents in connection with [those] commissions." (*Id.* ¶ 13.) Those claims were resolved pursuant to a written settlement agreement (the "Settlement Agreement") in November 2014. (*Id.* at Exhibit A.) Plaintiff claims that the Settlement Agreement is one-sided and executed "under false pretenses." (*Id.* ¶¶ 16-17.)

3. In 2014 the original purchase agreement between Wells USA and the Chicago insurance company (the "2011 Purchase Agreement") was "unilaterally amended and changed" by an unnamed "majority partner" and Wells USA "without securing the necessary signature of the Plaintiff pursuant to Section 14.5 of the "Kaercher Campbell Purchase Agreement." (*Id.* ¶¶ 15-16; *see also* Exhibit B at p.1.) That agreement is not attached to the First Amended Complaint. Only the purported second amendment to that agreement (the "Second Amendment") is attached as Exhibit B, and that amendment is signed by Plaintiff. Plaintiff claims that the 2011 Purchase Agreement and/or the Second Amendment thereto (Compl. at Exhibit B) were executed under "false pretenses" or were "unconscionable and legally unenforceable." (*Id.* ¶¶ 16, 18.)[1]

## **STANDARD OF REVIEW**

In reviewing the sufficiency of a complaint on a motion to dismiss for failure to state a claim, the court accepts well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). After excising allegations not entitled to the presumption, [the court] determine[s] whether the remaining factual allegations plausibly suggest an entitlement to relief. *Id.* (internal citation omitted).

Additionally, claims that sound in fraud must meet the heightened pleading standards of Rule 9(b), which require complaints to state with particularity the circumstances constituting fraud, including specific allegations of the "who, what, when, where, and how" of the alleged fraud.

---

[1] Plaintiff is not clear in his allegations with respect to which agreement—the 2011 Purchase Agreement or the Second Amendment thereto (Exhibit B)—he claims is "unconscionable." (*Id.*)

2

*Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018). Here, as discussed below, the claims in Plaintiff's First Amended Complaint do not meet the pleading standards.

## ARGUMENT

**I.     Count I: Plaintiff Has Not Alleged the Essential Elements of a Breach of Contract Claim.**

Plaintiff oddly frames his breach of contract claim as a request that the Court declare that the Settlement Agreement (Compl. at Ex. A) and the Second Amendment to the 2011 Purchase Agreement (Compl. at Ex. B) are unconscionable. Setting aside the strange nature in which Plaintiff chose to present his claim, whether viewed as a breach of contract claim or a declaratory judgment claim, Count I fails to state a claim as a matter of law.

To state a claim for breach of contract, Plaintiff must allege the following: (i) the existence of a valid and enforceable contract; (ii) Plaintiff's performance of all contractual obligations; (iii) Defendants' breach of the contract; and (iv) damages that resulted from the breach. *Burkhart v. Wolf Motors of Naperville, Inc. ex rel. Toyota of Naperville*, 2016 IL App (2d) 151053, ¶ 14. Count I should be dismissed because Plaintiff fails to allege the essential elements of a beach of contact claim.

***First***, while the First Amended Complaint mentions several agreements between the parties, Plaintiff does not actually allege that Defendants breached any agreement. ***Second***, Plaintiff does not allege that he performed all his contractual obligations under whatever agreement he claims has been breached. ***Third***, the First Amended Complaint does not identify the specific contractual obligation or provision that Defendants purportedly breached. ***Finally,*** the First Amended Complaint does not state with any specificity how Plaintiff was damaged as a result of any breach, or how those damages were caused by Defendants.

3

What Plaintiff is really seeking is an order declaring that "the agreements" (it is unclear what agreements Plaintiff is referring to) are unconscionable. (*See* "wherefore" clause, Compl. p. 6.) Plaintiff seems to allege that the Settlement Agreement and the Second Amendment are "unconscionable" because they were executed under duress and/or false pretenses. (Compl. ¶¶ 7, 16.) But such allegations are *defenses* to a breach of contract claim and do not give rise to a declaratory judgment claim as a matter of law.

A declaratory judgment action is meant to "afford security and relief against uncertainty with a view toward avoiding litigation, not toward aiding it." *Lihosit v. State Farm Mut. Auto. Ins. Co.*, 264 Ill. App. 3d 576, 580 (1st Dist. 1993). "The declaratory judgment procedure is **not** intended to permit litigation of moot or hypothetical cases." *Clyde Sav. & Loan Ass'n v. May Dep't Stores*, 100 Ill. App. 3d 189, 192 (1st Dist. 1981) (emphasis added).

To state a declaratory judgment claim, the plaintiff must allege (i) a plaintiff with a tangible legal interest, (ii) a defendant having an opposing interest, and (iii) an actual controversy between the parties concerning such interests. *Lihosit*, 264 Ill. App. 3d at 581. An "actual controversy" means "a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof." *Sharma v. Zollar*, 265 Ill. App. 3d 1022, 1027 (1st Dist. 1994). Without an actual controversy, there is no standing to assert a declaratory judgment claim. *Id.* A plaintiff must allege that he or she has sustained, or is in imminent danger of sustaining, a direct injury. *Id.*

To the extent that Count I seeks a declaratory judgment, that claim also should be dismissed. The First Amended Complaint does not allege any cognizable "controversy," the resolution of which will aid in the termination of any dispute between the parties. Plaintiff does not allege any disagreement between the parties concerning their respective rights and/or

4

obligations under the contracts. Plaintiff also fails to articulate any injury he believes he will imminently suffer if he does not obtain a declaration of his rights or liabilities. There is no allegation that Defendants have taken or intend to take any action under the Settlement Agreement or the Second Amendment that would cause Plaintiff to suffer any injury such that Plaintiff would have a right to seek a declaration that those agreements are "unconscionable." Instead, any declaration by the Court as to the unconscionability of the contracts would serve no meaningful purpose and amount to an impermissible advisory opinion.

Whether couched as a breach of contract claim or a declaratory judgment claim, Count I fails to state a claim and should be dismissed.

**II.** **Counts II-IV: Plaintiff's Fraud Claims Fail To State A Claim.**

In his First Amended Complaint, Plaintiff attempts to assert three fraud claims: Counts II (Consumer Fraud Act claim), III (fraudulent misrepresentation), and IV (fraudulent concealment). Each of these claims fails for two reasons. First, the fraud claims fail to plead fraud with particularity as required by Rule 9(b). Second, none of the fraud claims allege a cognizable claim.

**A.** **Counts II-IV: None of Plaintiff's Fraud Claims Meet Rule 9(b) Standards.**

As an initial matter, Plaintiff's fraud claims must be plead with particularity pursuant to Rule 9(b). *See Haywood*, 887 F.3d at 333 (Rule 9(b) applies to Consumer Fraud Act claims sounding in fraud); *Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1041-43 (N.D. Ill. 2007) (Rule 9(b) applies to claims of fraudulent misrepresentation); *Pastorelli Food Prod., Inc. v. Pillsbury Co.*, No. 87 C 20233, 1989 WL 58366, at *2 (N.D. Ill. Apr. 11, 1989) (fraudulent concealment claims must meet Rule 9(b) standards). Plaintiff must plead with particularity the circumstances constituting fraud, including the "who, what, when, where, and how" of the alleged fraud. *Haywood*, 887 F.3d at 333. Plaintiff comes nowhere close.

Plaintiff's Consumer Fraud Act claim (Count I) "sounds in fraud," as it is premised on the allegation that Defendants mislead Plaintiff by intentionally "falsifying documents in connection with the Plaintiff's commissions," secretly amending the 2011 Purchase Agreement, and "lying" during the negotiation and drafting of the 2011 Purchase Agreement. (Compl. ¶ 25.) Plaintiff never pleads, as he must, (i) the identity of the person "falsifying" commission documents or "secretly" amending the 2011 Purchase Agreement, or "lying" during the negations of the 2011 Purchase Agreement (the "who"), (ii) the "content" of those false statements (the "what"), (iii) the time the false statements were made (the "when"), (iv) the place where the commission documents were purportedly falsified, or where the 2011 Purchase Agreement was "secretly" amended, or where the "lying" occurred (the "where"), or (v) the method by which those false statements were communicated to the plaintiff (the "how").

Plaintiff's fraudulent misrepresentation claim (Count III) is equally deficient. All that is alleged is that Defendants somehow stalled the acquisition of Plaintiff's business with the intent to place Plaintiff in violation of his employment agreement (Compl. ¶¶ 30-31), and that Wells allegedly changed or altered Plaintiff's commissions and/or falsified documents in connection with Plaintiff's commissions. (Compl. ¶¶ 33-36.) The First Amended Complaint does not allege with specificity any false statement of fact made in connection with Plaintiff's commissions or the acquisition, when that statement was made, to whom that statement was made, or how that statement was communicated to Plaintiff.

Finally, Plaintiff's fraudulent concealment claim (Count IV) is similarly premised on the allegations that Wells and/or Wells USA "secretly" amended the original 2011 Purchase Agreement without obtaining Plaintiff's signature (Compl. ¶ 45), intentionally stalled the acquisition (Compl. ¶¶ 46-47), and changed and/or altered his commissions (Compl. ¶¶ 43, 49).

Once again, these allegations do not meet the heightened pleading requirements of Rule 9(b) and should be dismissed.

      **B.**    <u>**Count II**</u>**: Plaintiff Cannot State a Claim Under the Consumer Fraud Act.**

          **1.**    **Plaintiff is Not a "Consumer" Under the Act and Plaintiff Has Not and Cannot Allege a Consumer Nexus.**

The Illinois Consumer Fraud and Deceptive Practices Act is designed to protect ***consumers***. *Hill v. Names & Addresses, Inc.*, 212 Ill. App. 3d 1065, 1090 (2nd Dist. 1991); *see also Indus. Specialty Chemicals, Inc. v. Cummins Engine Co.*, 902 F. Supp. 805, 811 (N.D. Ill. 1995). Thus, to state a claim under the Act, a plaintiff must allege either (1) that it is a consumer, as defined under the Act itself, or (2) that there is a consumer nexus—*i.e.*, that the conduct involves trade practices directed to the market generally or otherwise implicates consumer protection concerns. *Lake Cty. Grading Co. of Libertyville v. Advance Mech. Contractors, Inc.*, 275 Ill. App. 3d 452, 459-60 (2nd Dist. 1995). Plaintiff has alleged neither.

The Consumer Fraud Act defines a "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). Plaintiff does not allege that he is a "consumer," nor can he. Plaintiff did not "purchase" or "contract to purchase" any "merchandise" from Defendants "for household use." Accordingly, Plaintiff is not a "consumer" under the Act.

Because Plaintiff is not a "consumer" under the Act, he must allege that there is a consumer nexus between the alleged conduct and Plaintiff's damages to state a valid claim. *Lake Cty.*, 275 Ill. App. 3d at 460.

Plaintiff has not alleged any consumer nexus whatsoever. To the contrary, Plaintiff apparently assumes—incorrectly—that he does not have to. (*See* Compl. at ¶ 21 ("[p]roof of a

7

public injury, a pattern or an effect on consumers generally shall not be required.").) Although Plaintiff fails to cite the portion of the statute on which he relies, Plaintiff is referring to a 1990 Amendment to Section 10a of the Act. 815 ILCS 505/10a. What Plaintiff fails to realize is that Illinois courts since that 1990 amendment have consistently clarified that the amendment did not do away with the consumer nexus requirement. *See Lake Cty.* 275 Ill. App. 3d at 459; *see also Brody v. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 298 Ill. App. 3d 146, 160 (2nd Dist. 1998) ("[T]he 1990 amendment simply clarified the legislative intent that a plaintiff suing under the Consumer Fraud Act could state a claim based upon a single, isolated injury and based solely upon the plaintiff's own injury. . . . [***T]he 1990 amendment did not eliminate the requisite connection to consumers***.") (emphasis added); *Barille v. Sears Roebuck & Co.*, 289 Ill. App. 3d 171, 179 (1st Dist. 1997) (dismissing Consumer Fraud Act claim with prejudice for failure to allege that the defendant's action "affected competition, caused confusion to customers, influenced the market generally or otherwise implicated consumer protection concerns.").

Nowhere does Plaintiff allege that the purported conduct—allegedly changing and/or altering Plaintiff's commissions, amending the 2011 Purchase Agreement without obtaining proper signatures, or "lying" during the negotiation and drafting of the 2011 Purchase Agreement—implicated consumer protection claims. (*See* Compl. ¶ 25.) Such an allegation would be nonsensical. The reality is, this is a private business dispute that does not implicate consumer protection concerns at any level, and the Court should dismiss Plaintiff's claim with prejudice.

### 2. The "Deceptive Acts" Alleged Are Not Actionable.

Separately, even if Plaintiff could somehow allege a consumer nexus (which he cannot), none of the alleged deceptive conduct is actionable.

8

Plaintiff's claim that Wells and/or Wells USA changed and/or altered Plaintiff's commissions and/or falsified documents in connection with Plaintiff's commissions (Compl. ¶25) is barred by the Settlement Agreement. That agreement, which is fully integrated, provides that in exchange for a lump sum payment of $250,000, Plaintiff released Wells from "all claims, liabilities, demands and causes of action, known or unknown, likely or unlikely, which [Plaintiff] [had] or claim[ed] to have against [Wells], as a result of [Plaintiff's] employment with or separation from employment." (Ex. A at ¶¶ 1, 2(b), 5.) This includes claims for compensation for "monies allegedly due to [Plaintiff] from [Wells]." (*Id.* ¶ 1.) The Settlement Agreement further contains an acknowledgement from Plaintiff that he "carefully read and fully underst[ood] all the provisions of [the] Agreement" and that Plaintiff entered into the agreement voluntarily. (*Id.* ¶ 10.) There is no allegation, nor could there be, that the Settlement Agreement was difficult to understand, that Plaintiff did not know what he was signing, or that any specific provisions therein are inherently unfair to one side. Plaintiff's claim is nothing more than an obvious attempt to relitigate claims that were resolved by the parties over three years ago. Accordingly, Plaintiff's Consumer Fraud Act claim as it relates to purported "alterations" to Plaintiff's commissions is barred by the Settlement Agreement.

Plaintiff also accuses Wells and/or Wells USA of "unilaterally amend[ing]" the Second Amendment attached to the First Amended Complaint as Exhibit B "without securing the necessary signature of the Plaintiff" pursuant to Section 14.5 of the Purchase Agreement. (*See* Compl., ¶ 25.) This allegation is demonstrably false. As shown on page 4 of Exhibit B to the First Amended Complaint, Plaintiff signed the Second Amendment in his individual capacity. Where, as here, material factual allegations in the complaint are refuted entirely by the attached exhibits, the allegations are not taken as true and the complaint should be dismissed. *Forrest v. Universal*

9

*Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007); 5A Fed. Prac. & Proc. Civ. § 1327 (3d ed.) ("[W]hen a disparity exists between the written instrument annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control, particularly when it is the instrument being relied upon by the party who made it an exhibit.") Plaintiff's Consumer Fraud Act claim as it relates to Defendant's purported failure to obtain the necessary signatures to the Second Amendment must be dismissed.

Finally, Plaintiff makes the nebulous allegation that Defendants engaged in a deceptive practice by lying during the negotiation and drafting of the 2011 Purchase Agreement. (Compl., ¶ 25.) This claim is barred by the statute of limitations applicable to Consumer Fraud Act Claims. Under the Act, the statute of limitations is three years, accruing when the plaintiff suffers injury. 815 ILCS 505/10a(e); *McCready v. Illinois Sec'y of State*, 382 Ill. App. 3d 789, 798 (3rd Dist. 2008). The 2011 Purchase Agreement was executed on **June 1, 2011** (Compl. at Ex. B, p. 1) and any "lying" in the negotiation and drafting of that agreement occurred prior to that date. This lawsuit was not filed until July 23, 2018—more than seven years later. Accordingly, Plaintiff's claim under the Consumer Fraud Act based on any statements made during the negotiation and drafting of the 2011 Purchase Agreement is time-barred.

    **C.**    **Count III: Plaintiff's Fraudulent Misrepresentation Claim Should be Dismissed Because Plaintiff Has Not and Cannot Allege the Essential Elements of the Claim.**

To prevail on a fraudulent misrepresentation claim, the plaintiff must plead and prove the following elements: (1) the defendant made a false statement of material fact; which (2) the defendant knew or believed to be false; (3) made the statement with the intent to induce the plaintiff to act; (4) the plaintiff acted in justifiable reliance on the truth of the statement; and (5) thereby sustained damages. *Doe v. Dilling*, 371 Ill. App. 3d 151, 168 (1st Dist. 2006).

Plaintiff's fraudulent misrepresentation claim is based on two allegedly false "statements." First, Defendants somehow stalled the acquisition of Plaintiff's business with the intent to place Plaintiff in violation of his employment agreement. (Compl. ¶¶ 30-31.) Second, Defendants allegedly changed or altered Plaintiff's commissions and/or falsified documents in connection with Plaintiff's commissions. (Compl. ¶¶ 33-36.) But these allegations do not give rise to a fraudulent misrepresentation claim.

For one, the allegation that Defendants improperly "stalled" the acquisition process is not a statement at all. *See Bank of Lincolnwood v. Comdisco, Inc.*, 111 Ill. App. 3d 822, 828-29 (1st Dist. 1982) (borrower's representation that it was committed to discounting leases with lender was a "promise to perform an act," not a false statement of fact that would constitute fraud). Glaringly absent from the First Amended Complaint is any identification of a specific *statement* made in connection with any alleged "stalling" during the acquisition, who made that statement, when the statement was made, and to whom. All Plaintiff alleges is an act of "stalling" without alleging any accompanying false statement of fact. (*See Supra* § II(A).)

Additionally, as stated above, the claim that Defendants changed and/or altered Plaintiff's commissions and/or falsified documents in connection with Plaintiff's commissions is barred by the Settlement Agreement. (*Supra* § II(B)(2).)

### D. <u>Count IV</u>: Plaintiff's Fraudulent Concealment Claim Should be Dismissed Because Plaintiff Has Not and Cannot Allege the Essential Elements of the Claim.

To state a claim for fraudulent concealment, a plaintiff must allege the following elements "(1) the defendant concealed a material fact under circumstances that created a duty to speak; (2) the defendant intended to induce a false belief; (3) the plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon the defendant's silence as a representation that the fact did

11

not exist; (4) the concealed information was such that the plaintiff would have acted differently had he or she been aware of it; and (5) the plaintiff's reliance resulted in damages." *Abazari v. Rosalind Franklin Univ. of Med. & Sci.*, 2015 IL App (2d) 140952, ¶ 27.

Plaintiff's fraudulent concealment claim falls woefully short of stating a claim. In similar fashion to its other claims, Plaintiff complains that Defendants (1) amended the 2011 Purchase Agreement without obtaining Plaintiff's signature (Compl. ¶ 45), (2) withheld its reasons for stalling the acquisition (Compl. ¶¶ 46-47), and (3) changed and/or altered his commissions (Compl. ¶¶ 43, 49). Once again, these facts do not and cannot give rise to a claim for fraudulent concealment for several reasons.

First, none of the above-described actions identify any specific material ***fact*** that was allegedly concealed from Plaintiff, as opposed to actions that Plaintiff thinks were unfair. Second, there are no facts alleged supporting the conclusion that Defendants in each of these circumstances had a duty to speak (*see* element one above). Third, to the extent any undisclosed material fact can be gleaned from the First Amended Complaint, Plaintiff's claim still fails for the additional reason that Plaintiff has not alleged that he could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection (*see* element three above). Fourth, Plaintiff does not allege that the concealed information was such that the Plaintiff would have acted differently had he been aware of it (*see* element four above). And finally, any fraudulent concealment claim based on Plaintiff's commissions are barred by the Settlement Agreement, as stated above. Plaintiff's blatant disregard for the basic elements of a fraudulent concealment claim warrants dismissal.

**CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court grant their Motion to Dismiss Plaintiff's Amended Complaint with prejudice and award such further and additional relief the Court deems equitable and just.

Dated: August 28, 2018

Respectfully submitted,

**WELLS FARGO INSURANCE SERVICES, INC., and WELLS FARGO INSURANCE SERVICES USA, INC., N/K/A USI INSURANCE SERVICES NATIONAL, INC.**

By: /s/ Melody L. Gaal
        One of Their Attorneys

Michael J. Grant
Melody L. Gaal
TABET DIVITO & ROTHSTEIN LLC
209 South LaSalle Street, 7th Floor
Chicago, IL 60604
Telephone: (312) 762-9450
Firm No. 38234
mgrant@tdrlawfirm.com
mgaal@tdrlawfirm.com

13